HANSON BRIDGETT LLP
PATRICK M. GLENN - 141604
pglenn@hansonbridgett.com
MOLLY A. LEE - 232477
mlee@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone:   (415) 777-3200
Facsimile:

(415) 541-9366

Attorneys for Defendant
CENTRAL CONTRA COSTA TRANSIT AUTHORITY

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRY WALLS,<br><br>            Plaintiff,<br><br>    v.<br><br>CENTRAL CONTRA COSTA TRANSIT AUTHORITY,<br><br>            Defendant. | No. C 08-0224-PJH<br><br>**DEFENDANT CENTRAL CONTRA COSTA TRANSIT AUTHORITY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION_____**<br><br>**Date:        April 7, 2010**<br>**Time:       9:00 a.m.**<br>**Courtroom:  3**<br>**Action Filed:  January 14, 2008**<br>**Trial Date:   August 9, 2010** |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ...........................1

MEMORANDUM OF POINTS AND AUTHORITIES..........................................................2

I.     INTRODUCTION ........................................................................................2

II.    FACTS .......................................................................................................3

    A.    To Ensure Consistent And Timely Service, CCCTA Negotiated A Strictly-Enforced Attendance Policy With The Union...................................3

    B.    Plaintiff's Employment With CCCTA ................................................5

        1.    Plaintiff Received Copies of the Attendance Policies and Was Familiar With Their Terms ..............................................5

        2.    Plaintiff Had a Long History of Attendance Infractions....................6

    C.    CCCTA Terminated Plaintiff After He Received Seven Missouts And One Unexcused Absence In A Five-Month Period .......................7

    D.    Plaintiff Grieved His January Termination, And CCCTA Agreed To Reinstate Him Subject To A Last Chance Agreement.............................7

    E.    Plaintiff Was Terminated Again After He Failed To Report To Work And Failed To Call In The Day After He Signed The Last Chance Agreement.........................................................................................9

    F.    CCCTA Allowed Plaintiff To Grieve His Termination Even Though He Waived His Right To Grieve It Under The Last Chance Agreement.......................................................................................10

    G.    Plaintiff Filed The Instant Lawsuit In January 2008..........................11

III.    ARGUMENT ..........................................................................................11

    A.    Plaintiff's FMLA Claim Fails As A Matter of Law .......................11

        1.    Plaintiff Was Not Entitled to FMLA Leave Because He Was Not an Eligible Employee ................................................11

        2.    Plaintiff's FMLA Retaliation Claim Cannot Succeed Because He Was Terminated for Violating the Last Chance Agreement, Not for Requesting Leave .........................................13

    B.    CCCTA Afforded Plaintiff Due Process Under The Federal And State Constitutions ...................................................................15

        1.    Plaintiff Knowingly and Voluntarily Waived His Due Process Rights By Signing the Last Chance Agreement..........................15

        2.    CCCTA's Grievance Procedure Provided Plaintiff With Due Process .......................................................................16

    C.    Plaintiff Was Not Wrongfully Terminated....................................18

IV.    CONCLUSION ........................................................................................18

DEF. CCCTA'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION (CASE NO. C 08-0224-PJH)

2261178.2

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

**Cases**

4

*Armstrong v. Meyers*,
   964 F.2d 948 (9th Cir. 1992) ................................................................. 16, 17

5

6

*Brohm v. Jh Props.*,
   149 F.3d 517 (6th Cir. 1998) ............................................................. 11

7

*Cleveland Board of Education v. Loudermill*,
   470 U.S. 532 (1985) ............................................................................ 15

8

*Flippin v. Los Angeles City Bd. of Civil Service Commissioners*,
   148 Cal. App. 4th 272 (2007) ............................................................ 15

9

*Gantt v. Sentry Ins. Co.*,
   1 Cal. 4th 1083 (1992) ........................................................................ 18

10

*Gilliam v. UPS*,
   233 F.3d 969 (7th Cir. 2000) ............................................................. 14

11

*Green v. Ralee Eng'g Co.*,
   19 Cal. 4th 66 (1998) .......................................................................... 18

12

*Hammon v. DHL Airways, Inc.*,
   165 F.3d 441 (6th Cir. 1999) ............................................................. 11

13

*Hobson v. Raychem Corp.*,
   73 Cal. App. 4th 614 (1999) .............................................................. 18

14

15

*Jones v. Omnitrans*,
   125 Cal. App. 4th 273 (2004) ................................................. 15, 16, 17

16

*Lewis v. Mt. Morris Twp.*,
   2007 U.S. Dist. LEXIS 76186 (E.D. Mich., October 15, 2007) ............................ 15, 16

17

*Ostlund v. Bobb*,
   825 F.2d 1371 (9th Cir. 1987) ........................................................... 15

18

19

*Rexwinkel v. Parsons*,
   162 Fed. Appx. 698 (9th Cir. 2006) ................................................... 13

20

*Robison v. City of Manteca*,
   78 Cal. App. 4th 452 (2000) .............................................................. 15

21

*Skelly v. State Personnel Board*,
   15 Cal. 3d 194 (1975) ........................................................................ 15

22

*Smith v. BellSouth Telecomms., Inc.*,
   273 F.3d 1303 (11th Cir. 2001) ......................................................... 12

23

24

*Tameny v. Atlantic Richfield Co.*,
   27 Cal. 3d 167 (1980) ........................................................................ 18

25

*Townsel v. San Diego Metro. Transit Development Bd.*,
   65 Cal. App. 4th 940 (1998) ....................................................... 15, 16

26

*Turner v. Anheuser-Busch, Inc.*,
   7 Cal. 4th 1238 (1994) ....................................................................... 18

27

28

DEF. CCCTA'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION (CASE NO. C 08-0224-PJH)

2261178.2

# TABLE OF AUTHORITIES
**(continued)**

**Page**

**Statutes**

29 U.S.C. §§ 2601, *et seq.* .................................................................................................1

29 U.S.C. § 2612(a) ...........................................................................................................11

42 U.S.C. § 1983 ................................................................................................................11

DEF. CCCTA'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION (CASE NO. C 08-0224-PJH)

2261178.2

1
## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

2      TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD: PLEASE TAKE

3 NOTICE that on April 7, 2010 at 9:00 a.m. in Courtroom 3 of the above-entitled Court,

4 located at 1301 Clay Street, 3rd Floor, Oakland, California, Defendant Central Contra

5 Costa Transit Authority ('CCCTA"), through its attorneys, Hanson Bridgett LLP, will move

6 this Court for summary judgment, or in the alternative, summary adjudication, in its favor

7 in this action brought by Plaintiff Kerry Walls ("Plaintiff").

8      This motion is made on the grounds that the Complaint fails because Plaintiff

9 cannot show that there are genuine issues as to any material fact.  Thus, CCCTA is

10 entitled to summary judgment because the undisputed facts establish Plaintiff did not

11 request leave when he was an employee of CCCTA and thus was not an "eligible

12 employee" within the meaning of the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et*

13 *seq.* ("FMLA").  Moreover, there is no evidence to establish that Plaintiff was terminated

14 for allegedly requesting leave when he was not an employee.  Thus, Plaintiff cannot

15 establish a violation of the FMLA.  In addition, Plaintiff cannot establish a violation of his

16 right to due process under the federal or California Constitutions because he waived his

17 right to due process procedures by entering into a Last Chance Agreement which

18 provided for immediate and final termination without recourse to the grievance procedure

19 for a violation of its terms.  Moreover, even if Plaintiff had not waived his right to

20 procedural due process, he was provided all due process protections to which he was

21 entitled because the parties processed his grievance through the grievance and

22 arbitration procedure.  Finally, because Plaintiff is unable to support his claims for

23 violation of the FMLA or violation of his constitutional right to due process, he cannot

24 sustain a claim for wrongful termination.

25      This motion is based on this Notice of Motion and Motion, the supporting

26 Memorandum of Points and Authorities, the declarations of Caroline Muegge and Molly

27 Lee, all pleadings and papers on file, any other matters of which judicial notice may be

28 / / /

- 1 -

1  taken, and any oral argument and documentary evidence as may be presented at or

2  before the hearing.

3  **MEMORANDUM OF POINTS AND AUTHORITIES**

4  **I.      INTRODUCTION**

5  Defendant Central Contra Costa Transit Authority ("CCCTA") provides public

6  transportation services throughout the Central Contra Costa communities of Clayton,

7  Concord, Martinez, Pleasant Hill, Walnut Creek, Danville, San Ramon, Lafayette,

8  Orinda, and Moraga.  Because CCCTA is a public transit agency, it relies on its drivers

9  to provide timely and consistent service to the communities that it serves.  As such, the

10  reliable attendance of its drivers is of paramount concern.

11  CCCTA's attendance control program and call-in procedure provide incentive for

12  bus operators to report regularly and on time to work and to promote operator

13  communication with CCCTA.  The program allows drivers up to five attendance

14  instances or four "missouts" (failure to report for work and failure to call in at least 45

15  minutes prior to a shift) within a five-month period.  CCCTA strictly enforces its

16  attendance policy, and operators are subject to termination for violation of its terms.

17  Plaintiff Kerry Walls ("Plaintiff") is a former bus operator for CCCTA.  Throughout

18  his employment, Plaintiff accumulated one of the worst attendance records in CCCTA

19  history.  He consistently called in with various excuses, such as "family problems,"

20  "personnel problems," deaths in the family and, on at least two occasions, incarceration.

21  Even more often, he failed to call in at all and was repeatedly charged with missouts in

22  violation of the attendance policy.  In each instance, CCCTA warned Plaintiff that his

23  attendance infractions were serious and constantly counseled him that he needed to

24  improve his attendance record.  These efforts proved futile, and when Plaintiff

25  accumulated seven missouts and an unexcused absence in a five-month period, he was

26  terminated.

27  The Amalgamated Transit Union, Local 1605 ("the Union"), which is the exclusive

28  representative of the bus operators at CCCTA, grieved Plaintiff's termination on his

- 2 -

behalf. To resolve the grievance, CCCTA agreed to reinstate him subject to a "Last Chance Agreement." Pursuant to the Agreement, Plaintiff would be placed on an afternoon shift. If he had one missout or more than one sick instance in a three-month period, he would be subject to immediate, non-grievable termination. The day after he signed the Agreement, Plaintiff failed to report to work and failed to call in. As such, he was terminated again.

Almost two years later, Plaintiff filed this lawsuit, claiming that CCCTA improperly denied him leave under the Family and Medical Leave Act ("FMLA) and failed to give him proper procedural due process. These claims are baseless, as is the wrongful termination cause of action based on them. First, when Plaintiff requested FMLA leave, he was not a CCCTA employee. CCCTA is not required to grant leave to persons which it does not employ. Further, Plaintiff waived his right to due process procedures when he signed the Last Chance Agreement. And even if he had not waived his due process rights, he was granted all constitutionally-required protections through the parties' grievance procedure. As such, CCCTA is entitled to summary adjudication of all of Plaintiff's claims in its favor.

## II. FACTS

**A. To Ensure Consistent And Timely Service, CCCTA Negotiated A Strictly-Enforced Attendance Policy With The Union.**

CCCTA is a public agency operating local bus transportation in Central Contra Costa County. It provides daily fixed-route and paratransit transportation services throughout Central Contra Costa. CCCTA has a fleet of approximately 131 fully accessible buses and 48 passenger vans. It operates 27 fixed-routes, including five express commuter routes. An average of 16,402 passengers board CCCTA's fixed-route service buses each weekday. CCCTA employs over 200 individuals to operate its buses. (Muegge Dec., ¶2)

To meet the public's transportation needs and expectations, CCCTA must operate its bus service in a consistent and timely manner. Service is jeopardized when an

- 3 -

1    operator fails to perform his or her regular assignment whether due to illness or

2    otherwise.  Service is particularly at risk when an operator's absence from work is

3    unexpected because it is more difficult to arrange alternative coverage.  To that end,

4    CCCTA negotiated an attendance control program and call-in procedure with the Union

5    to provide incentive for bus operators to report regularly and on time to work and to

6    promote operator communication with CCCTA.  (Muegge Dec., ¶3)

7            Article 53 of the parties' Memorandum of Understanding ("the MOU") sets out the

8    different types of attendance infractions that bus operators may incur, including

9    missouts, tardies, sick days, and unexcused absences.  Operators are charged with a

10   missout if they are absent from work and fail to telephone or report to the dispatcher their

11   unavailability for work at least 45 minutes prior to their report time.  A sick day is an

12   absence for which an operator is ill and unable to work but has followed the proper call-

13   in procedure (*i.e.,* notified dispatch of their inability to work at least 45 minutes prior to

14   their report time).  (Muegge Dec., ¶4; Lee Dec., ¶3, Ex. B, deposition transcript of Lisa

15   Rettig, hereinafter referred to as "Rettig Depo.," at 9:24-10:21, Ex. 1, Article 53)  An

16   unexcused absence is defined as an absence from work without a proper excuse for

17   which the employee provided the required 45 minutes advance notice.  (Rettig Depo.,

18   9:24-10:21, Ex. 1, Article 53)  Operators who accumulate more than four missouts or five

19   attendance infractions of any kind within a five-month period will be subject to

20   termination.[1]  (Rettig Depo., 9:24-10:21, Ex. 1, Article 53; Lee Dec., ¶2, Ex. A; deposition

21   transcript of Kerry Walls, hereinafter referred to as "Walls Depo.," at 88:21-89:13)  If an

22   operator is charged with a missout or a tardy and seeks to have that incident retracted or

23   changed, the operator must inform the dispatch supervisor in writing within 24 hours of

24   the tardy or missout of that intent.  (Rettig Depo., 9:24-10:21, Ex. 1, Article 53)

25           CCCTA strictly enforces the attendance control policy.  (Muegge Dec., ¶4; Lee

26   Dec., ¶5, Ex. D, Deposition of Carol Muegge, hereinafter referred to as "Muegge Depo.,"

27

28   _____

[1]  The five-month period will be extended by the length of any absence of one week or
more.  (Rettig Depo., 9:24-10:21, Ex. 1, Article 53)

- 4 -

1   at 23:2-24)  Thus, each operator's attendance is tracked meticulously on an attendance

2   sheet.  (Muegge Dec., ¶4)  In general, employees are provided with written warnings and

3   informal counseling prior to termination, although these steps are not necessarily

4   required in all circumstances.  Once an employee reaches the point of termination in the

5   attendance policy, CCCTA does not give discipline less than termination.  (Muegge Dec.,

6   ¶4)

7        CCCTA's expectations with regard to attendance are clearly communicated to bus

8   operators during their initial training.  (Muegge Dec., ¶4)  Indeed, almost the entire

9   introductory chapter of CCCTA's "Transit Operator's Training Manual" is dedicated to

10  explaining administration of Article 53 of the MOU and the proper call-in procedures.

11  (Muegge Dec., ¶4)  The welcome packet that operators receive on graduation day again

12  explains how the attendance policy is administered and the penalty for failure to comply.

13  It also provides operators with samples of the forms they should use to request time off

14  of work or to request a change, excuse, or retraction of an absence incident that has

15  been charged against them.  (Muegge Dec., ¶4)

16  **B.    Plaintiff's Employment With CCCTA.**

17       **1.    Plaintiff Received Copies of the Attendance Policies and Was Familiar
               With Their Terms.**
18

19       CCCTA hired Plaintiff as a part-time operator in June 1995 and promoted him to

20  full-time operator in March 1998.  Except for a brief temporary layoff, CCCTA employed

21  him continuously from 1995 until his first termination in January 2006.  (Muegge Dec.,

22  ¶5; Walls Depo., 76:4-6, 81:15-82:9)  CCCTA provided Plaintiff with a copy of the

23  Employee Handbook which contained the CCCTA attendance policies at the time of his

24  hire, and Plaintiff acknowledged receipt of the handbook on a written form.  (Walls

25  Depo., 75:11-76:13, Ex. 2)  In addition, Plaintiff testified at his deposition that the Union

26  provided him with a copy of the MOU, which also contained the CCCTA attendance

27  policies.  (Walls Depo., 78:16-81:14)  Plaintiff also testified that he became familiar with

28  the attendance policies during his employment at CCCTA.  (Walls Depo., 87:2-89:25)

1

**2.      Plaintiff Had a Long History of Attendance Infractions.**

2

During his 11 years of employment at CCCTA, Plaintiff consistently failed to meet

3

CCCTA's attendance standards.  He began accumulating written warnings for

4

unexcused absences and missouts during his first year of employment and continued to

5

receive them as the years progressed; the stream of warnings only breaking when

6

Plaintiff was out on medical leave.  Plaintiff amassed approximately 50 different written

7

warnings for attendance infractions before he received the January 20, 2006 Notice of

8

Intent to Terminate, including two different Notices of Intent to Terminate in 2002.

9

(Muegge Dec., ¶5)  Plaintiff was also counseled on at least three different performance

10

reviews that his attendance was a problem and that he needed to improve.  (Muegge

11

Dec., ¶5)

12

Despite Plaintiff's exceedingly poor attendance record, CCCTA continued to give

13

him second chances to improve.  For example, on April 30, 2002, Plaintiff notified

14

dispatch that he could not report to work because he was incarcerated.  CCCTA heard

15

nothing from Plaintiff for over two weeks, except for a facsimile from his doctor indicating

16

that he was expected to be at work on May 14, 2002.  When Plaintiff failed to report or

17

call-in on that day and several days after, CCCTA issued him a Notice of Intent to

18

Terminate, stating that if he did not contact CCCTA within 5 days, it would consider his

19

job abandoned.  Plaintiff contacted CCCTA on approximately May 19, 2002 and told

20

Joan Roberts, Transportation Manager, that he could not return to work because he was

21

in "detox" and was entering a live-in rehabilitation program.[2]  Roberts told Plaintiff to take

22

as much time as he needed and to simply update her on his progress and when he

23

planned to return to work.[3]  (Walls Depo., 151:20-15614, Ex. 41)

24

/ / /

25

/ / /

26

_____

[2]  Plaintiff testified that he stayed in the rehabilitation program continuously from May 19, 2002 until September 2002.  (Walls Depo., 152:25-153:17

27

[3]  In addition, when Plaintiff needed to be absent from work for medical reasons, CCCTA granted FMLA/CRFA leave. It did so at least four times in the course of his employment, in 2000, 2003, 2004 and 2005.  (Muegge Dec., ¶5)

28

DEF. CCCTA'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION (CASE NO. C 08-0224-PJH)

2261178.2

1

**C.    CCCTA Terminated Plaintiff After He Received Seven Missouts And One Unexcused Absence In A Five-Month Period.**

2

3    Despite the repeated warnings, Plaintiff's attendance only worsened.  He received

4    an unexcused absence on September 12, 2006 and missouts for failing to report or call-

5    in on September 16, 2005, October 24, 2005, December 29, 2005, and December 30,

6    2005.  (Walls Depo., 166:12-173:22, Exs. 50-54)  After Plaintiff received three more

7    missouts for failing to report to work or timely call in on January 18, 19 and 20, CCCTA

8    concluded that termination was in order.  (Walls Depo., 174:1-176:4, Exs.18-20)  Plaintiff

9    never filed a grievance over any of these warnings and never submitted a request for

10   retraction, as permitted by the MOU.  (Muegge Dec., ¶6)

11   CCCTA issued Plaintiff a Notice of Intent to Terminate on January 20, 2006.

12   (Walls Depo., 175:6-176:4, 183:10-186:5; Ex. 57; Muegge Depo., 7:11-8:5, Ex. 1)  The

13   Notice identified the eight instances on which his termination would be based.  It also

14   informed Plaintiff that at a conference on January 27, 2006, he could protest, either

15   orally or in writing, the proposed termination.  (Walls Depo., 175:6-176:4, Ex. 57;

16   Muegge Depo., 7:11-8:12, Ex. 1)  Plaintiff failed to appear at the conference.  (Rettig

17   Depo., 23:3-19; Churchill Depo., 15:8-16:20)  As such, on February 2, 2006, CCCTA

18   issued Plaintiff a Notice of Termination, effective January 27, 2006.  (Muegge Depo.,

19   11:7-12:3, Ex. 2)

20

**D.    Plaintiff Grieved His January Termination, And CCCTA Agreed To Reinstate Him Subject To A Last Chance Agreement.**

21

22   Plaintiff grieved his termination by utilizing the grievance procedures available to

23   him under the MOU.  (Walls Depo. 182:13-185:12, 189:20-191:7; Ex. 59; Rettig Depo.,

24   26:18-31:4, Ex. 5)  Pursuant to Step II of the grievance procedure, on February 16,

25   2006, Lisa Rettig, Human Resources Manager, held a grievance meeting with Plaintiff,

26   Union representative Juan Lujan and shop steward David Garcia.  At the meeting,

27   Plaintiff attempted belatedly to protest some of the missouts.  He claimed he was sick on

28   certain days.  Because he had not filed timely requests to retract any of the incidents

- 7 -

1   and because the explanations did not excuse his failure to call in prior to his shifts, Rettig

2   indicated that she was denying the grievance.  In response, Juan Lujan asked that she

3   consider reinstating Plaintiff pursuant to a "Last Chance Agreement."  A Last Chance

4   Agreement provided Plaintiff with a final opportunity to correct his behavior, but also

5   required that he consent to summary termination if he failed to abide by its terms.

6   (Rettig Depo., 34:1-55:14, Exs. 6-8; Walls Depo., 199:15-202:18, 261:17-264:4, Ex. 60)

7        On February 23, 2006, Rettig issued her written response to the Step II grievance

8   meeting.  In her response, Rettig agreed to resolve the grievance by reinstating Plaintiff

9   pursuant to a Last Chance Agreement.  She attached a proposed agreement that

10  allowed Plaintiff an additional excused absence, but provided that Plaintiff would be

11  terminated for any subsequent missouts.  Juan Lujan and Rettig discussed the terms of

12  the Agreement on several occasions over the next week.  (Rettig Depo., 47:13-49:21,

13  55:15-59:25, 61:12-62:23, Exs. 8, 9)

14       Rettig met with Plaintiff and Lujan on March 1, 2006 to discuss the terms of the

15  Last Chance Agreement.  They agreed that Plaintiff would be reinstated, but that if he

16  had one missout in the following three months or more than one sick instance, he would

17  be terminated immediately, without recourse to the grievance procedure.  They also

18  agreed that Plaintiff would return to work the next day on March 2, 2006 for a refresher

19  training in the morning and take over a regular run starting in the afternoon.  (Rettig

20  Depo, 70:25-74:21, 79:10-80:24, Exs. 9, 11; Walls Depo., 212:5-213:1, 220:6-222:20,

21  264:18-268:11)

22       When Lujan and Rettig told Plaintiff he was to return to work the next day,

23  however, Plaintiff balked.  For the first time, he claimed he could not return to work so

24  quickly, stating that he suffered from depression and a sleep disorder.  He asked to be

25  placed on medical leave until April and told Rettig to call his doctors to verify his claims.

26  He offered her two business cards, one for a psychologist, Harmesh Kumar, and the

27  / / /

28  / / /

- 8 -

1  other for a Licensed Therapist, Carole Ingliss[4] and asked Rettig to call them  (Rettig

2  Depo, 75:11-76:18, 78:15-79:9, 82:19-83:7, Ex. 13)

3          Rettig, surprised by Plaintiff's sudden change in position, did not accept the cards.

4  Instead, she advised Plaintiff that he had three options.  If he was ready to perform work,

5  he could sign the Agreement, which would reinstate him immediately, and begin work

6  the next day under the terms of the Agreement.  If he was not ready to work, he could

7  either wait until he was ready to work again and then reapply for a position, or he could

8  continue to pursue his grievance through the next steps of the grievance procedure.

9  Plaintiff discussed his options at length with Lujan and told Rettig that he was ready to

10  come back to work.  (Rettig Depo, 76:20-79:9, 84:16-86:21; Walls Depo., 213:12-218:19)

11  The next day, Plaintiff signed the Agreement.  (Rettig Depo, 68:14-70:9; Walls Depo.,

12  219:10-220:5, Ex.  61)

13  **E.   Plaintiff Was Terminated Again After He Failed To Report To Work And**
       **Failed To Call In The Day After He Signed The Last Chance Agreement.**
14

15          As planned, Plaintiff attended the refresher training on March 2.  (Rettig Depo,

16  90:21-91:15; Walls Depo., 226:9-228:3)  The very next day, however, he failed to call in

17  and failed to report for his afternoon regular run shift.  As a result, he received a

18  missout.[5]  Accordingly, on Monday, March 6, CCCTA issued a Notice of Termination,

19  informing Plaintiff that he violated the Last Chance Agreement and was terminated

20  effective immediately.  It also reminded Plaintiff that he had waived his right to grieve the

21  termination.  (Muegge Depo, 34:15-35:16, Ex. 12; Walls Depo., 229:7-230:5, Ex. 62)

22  / / /

23  / / /

24  _____

25  [4]  Plaintiff maintains that he tried to give Rettig these cards at the February 16 meeting
    and that he tried to give Rettig a doctor's certification form from the California
26  Employment Development Department which is used to apply for disability benefits at
    the March 1 meeting.  (Walls Depo., 225:20-226:8, 268:12-269:19, 273:23-274:4, 278:8-
27  281:12, 299:10-23 Ex. 69)
    [5]  In his deposition, Plaintiff explained that he was in a "very deep sleep" and was unable
28  to awake until after dark on March 3, preventing him from calling in prior to his shift.
    (Walls Depo., 230:6-10)

DEF. CCCTA'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION (CASE NO. C 08-0224-PJH)                    2261178.2

**F.    CCCTA Allowed Plaintiff To Grieve His Termination Even Though He Waived His Right To Grieve It Under The Last Chance Agreement.**

Nevertheless, on March 8, 2006, Plaintiff filed a grievance protesting his termination and seeking reinstatement.  (Walls Depo., 235:23-237:7, Ex. 64) CCCTA summarily rejected it on the ground that the grievance itself violated the Last Chance Agreement.  The Union, on behalf of Plaintiff, filed another grievance also seeking reinstatement.  (Walls Depo., 282:16-285: 13, Exs. 64, 70, 71)  Even though the Last Chance Agreement also rendered this grievance invalid, CCCTA allowed the grievance process to go forward.  Between March 16 and April 11, 2006, Plaintiff and the Union proceeded through the grievance procedure.  (Rettig Depo, 123:9-125:7, 129:16-131:1, 137:9-146:10, Exs. 22-26, 28; Walls Depo., 285:18-287:2, 292:1-293:25, 303:13-305:1, 313:1-315:24, Exs. 72-75; Lee Dec., ¶4, Ex. C, deposition transcript of William Churchill, hereinafter referred to as "Churchill Depo.," at 8:13-13:13, 17:22-19:3, Exs. 2, 3; Muegge Depo., 14:10-19:17, Ex. 4-6)  Plaintiff presented to CCCTA an oral and a written statement, including a eight-page handwritten statement complete with 14 exhibits, which he read aloud at the Step II meeting.  Plaintiff contended that he was improperly charged a missout on March 3 and that he should have been granted medical leave.  (Rettig Depo, 122:10-123:3, 137:9-146:10, Exs. 21, 25-28; Walls Depo., 303:13-305:1, Ex. 73)

CCCTA denied Plaintiff's grievance, finding that he was properly charged a missout.  It further found that he was not entitled to medical leave because he was not an employee when he requested medical leave, having been terminated on January 27.  (Rettig Depo, 145:19-146:10, Ex. 28; Walls Depo., 315:1-20, Ex. 75)  Subsequently, the Union decided not to take the grievance to arbitration.[6]  (Walls Depo., 315:15-319:23)

/ / /

/ / /

---

[6]  Plaintiff filed approximately three more grievances, all of which were denied because they were based on the same facts of this grievance.  (Walls Depo., 319:24-232:2; Churchill Depo., 24:12-27:22, Ex. 5)

2261178.2

1

**G.    Plaintiff Filed The Instant Lawsuit In January 2008.**

2

On January 14, 2008, Plaintiff filed the instant lawsuit against CCCTA.  He alleges

3

four causes of action:  (1) violation of the FMLA; (2) violation of his procedural due

4

process rights under the California Constitution; (3) violation of his procedural due

5

process rights under the federal constitution (via a 42 U.S.C. § 1983 claim); and

6

(4) wrongful termination in violation of public policy.  As explained below, Plaintiff's

7

claims are meritless.

8

**III.    ARGUMENT**

9

**A.    Plaintiff's FMLA Claim Fails As A Matter of Law.**

10

In his first claim, Plaintiff contends that CCCTA violated the Family Medical Leave

11

Act ("FMLA").  Although it is not clear from the Complaint, it appears that Plaintiff alleges

12

CCCTA violated the FMLA based on two theories:  (1) by failing to provide him leave

13

pursuant to a request for leave he allegedly made during the March 1, 2006 Step II

14

grievance hearing; and (2) by allegedly retaliating against him for requesting leave

15

during the March 1, 2006 meeting.  These claims are meritless.

16

**1.    Plaintiff Was Not Entitled to FMLA Leave Because He Was Not an Eligible Employee.**

17

18

First, Plaintiff's FMLA claim fails because he was not an "eligible employee" within

19

in the meaning of the law.  To be entitled to protected leave under the FMLA, the person

20

requesting leave must be an "eligible employee" within the meaning of the Act.

21

29 U.S.C. § 2612(a).  At a minimum, an "eligible employee" is one who is actually

22

employed by the employer from whom he or she seeks the leave at the time of the leave

23

request.  *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 451 (6th Cir. 1999) ("an

24

employee cannot bring a claim under the FMLA unless he . . . requests relief during his

25

employment"); *Brohm v. Jh Props.*, 149 F.3d 517, 520, 523 (6th Cir. 1998) (plaintiff not

26

entitled to FMLA leave because he "offers no evidence that he requested [it] while he

27

was employed"); *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1311 (11th Cir.

28

/ / /

- 11 -

1   2001) (the right to take FMLA leave "obviously cannot be exercised after the termination

2   of the employment relationship.")  Plaintiff fails to meet this threshold requirement.

3   　　　　Plaintiff asserts that he requested medical leave at the March 1, 2006 grievance

4   meeting during which the parties negotiated his Last Chance Agreement.  But because

5   CCCTA terminated Plaintiff on January 27, 2006, he was not an employee of CCCTA at

6   that time.  And plaintiff did not request leave after he was reinstated on March 2, 2009.

7   To the contrary, he reported to work for his refresher training as required by the Last

8   Chance Agreement and worked a normal day.  Accordingly, he did not request leave

9   while he was employed by CCCTA.  His FMLA claim fails on that basis.

10   　　　　In an effort to resurrect Plaintiff's FMLA claim from this fatal flaw, Plaintiff's

11   attorneys worded Plaintiff's complaint creatively to imply that CCCTA had not yet

12   terminated Plaintiff at the time of the March 1, 2006 meeting.[7]  (Compl., ¶¶3-5)

13   Nonsense.  Any assertion that Plaintiff was an employee at that time is belied by the

14   overwhelming evidence to the contrary and Plaintiff's own admissions.

15   　　　　First, the February 2, 2006 Notice of Termination unambiguously implements the

16   proposed termination, effective January 27, 2006.  (Muegge Depo., 11:7-12:3, Ex. 2)  In

17   addition, the February 9, 2006 grievance that Union representative Juan Lujan filed on

18   behalf of Plaintiff specifically alleges that "[o]n February 2, 2006, Operator Kerry Walls

19   was terminated in violation of CCCTA's Attendance Policy and MOU Article 53." (Walls

20   Depo., 190:1-192:13, Ex. 59)  It also asks that Plaintiff be "reinstated to his former

21   position."  (Walls Depo., 190:1-192:13, Ex. 59)  Further, the Last Chance Agreement that

22   Plaintiff signed on March 2, 2006 is labeled "Reinstatement of Employment."  (Walls

23   Depo., 219:10-24, Ex. 61)  In addition, Plaintiff filed a sworn complaint with the California

24   Department of Fair Employment and Housing ("DFEH") in which he alleged that he was

25   terminated on January 27, 2006.  (Lee Dec., ¶6, Ex. E)  Plaintiff also described his

26   termination and his efforts to get his job back in sworn deposition testimony in his

27   _____

[7]   For example, the complaint refers to the "proposed termination" and states that Rettig
28   advised Plaintiff that "he would lose his job unless he signed a 'last chance agreement.'"
(Compl. ¶¶ 3-5)

1   workers' compensation case.  (Lee Dec., ¶7,  Ex. F)  Finally, during his deposition in this

2   case, Plaintiff testified as follows: "I remember saying to Lisa Rettig and I looked at her

3   dead in the face and I said to her, 'If that's what it takes for me to get my job back' -- 'if

4   that's what it takes for me to get my job back, I'll sign it.'"  (Walls Depo., 224:13-25)  He

5   further admitted that although he could not remember exactly when he received the

6   February 2, 2006 Notice of Termination, that he did receive it at some point, and that

7   when he received it, he understood his employment was terminated effective January

8   27, 2006.  (Walls Depo., 260:22-261:22, Ex. 58)  As such, there is no real question that

9   Plaintiff was not a CCCTA employee on March 1, 2006.

10       Accordingly, because Plaintiff was not a CCCTA employee at the time he

11   contends he requested leave, he was not an "eligible employee" within the meaning of

12   the law.

13       **2.    Plaintiff's FMLA Retaliation Claim Cannot Succeed Because He Was
         Terminated for Violating the Last Chance Agreement, Not for
14       Requesting Leave.**

15       Nor can Plaintiff establish that his March 6 termination was in retaliation for

16   allegedly requesting leave during the March 1 meeting.  To establish a *prima facie* case

17   of FMLA retaliation/interference, Plaintiff must show that (1) he exercised rights under

18   the FMLA, (2) CCCTA engaged in activity tending to chill the exercise of those rights,

19   (3) the activity was motivated by his exercise of his FMLA rights.  *Rexwinkel v. Parsons*,

20   162 Fed. Appx. 698, 700 (9th Cir. 2006).[8]  Plaintiff cannot meet this burden.

21       As explained above, Plaintiff did not have the right to request leave prior to his

22   reinstatement because he was not an employee.  As such, he cannot establish that he

---

[8]  The Ninth Circuit recognizes two types of FMLA "retaliation" claims: an "interference"
claim, which asserts that the employer took an adverse employment action against the
employee because he used or sought to use FMLA leave; and a true "retaliation" claim,
which asserts that the employer discriminated against the employee for opposing
practices that FMLA makes unlawful.  CCCTA analyzes Plaintiff's claim under an
"interference" theory because it knows of no evidence that Plaintiff opposed a practice
that the FMLA makes unlawful.  However, even assuming Plaintiff is alleging true
"retaliation" as opposed to "interference," the claim fails for the same reasons - he did
not exercise any lawful rights under the FMLA and there is no evidence that CCCTA
terminated him for any other reason than the fact that he violated the Last Chance
Agreement.

1    "exercised his rights under the FMLA."  Further, even assuming he lawfully exercised

2    FMLA rights by requesting leave, the case is devoid of any evidence that his termination

3    was motivated by his request for leave.  Quite the contrary, the undisputed evidence

4    establishes that CCCTA terminated Plaintiff's employment for the exact reason it said it

5    did - because he violated the Last Chance Agreement by failing to report to work and by

6    failing to call in prior to his shift on March 3, 2006.

7           Plaintiff voluntarily entered into the Last Chance Agreement on the advice of his

8    Union.  The Union explained all the terms of the Agreement to him before he signed.

9    (Walls Depo., 218:20-222:5, Ex. 61)  Plaintiff and the Union negotiated the terms of the

10   Agreement with Rettig, and he was not required to sign it immediately.  In fact, he

11   considered the Agreement for a full 24 hours before signing it.[9]  (Walls Depo. 219:10-

12   220:5; Rettig Depo., 68:7-21)  Plaintiff understood that by signing the Agreement, he

13   would be terminated again if he had another missout during the following three months.

14   (Walls Depo, 220:18-221:9)  Yet, despite his admitted understanding, Plaintiff had a

15   missout the very next day.  There was no other reason for his termination.  Moreover,

16   because the Last Chance Agreement allowed Plaintiff another sick instance in the three-

17   month period, he could have easily avoided termination simply by calling in 45 minutes

18   prior to his afternoon shift.  He did not do so.

19          Plaintiff violated the Last Chance Agreement by failing to call in prior to his shift.

20   Nothing in the FMLA precluded CCCTA for terminating him for that reason,[10] and there

21   is no evidence that he was terminated for any other reason.  As such, Plaintiff's

22   retaliation claim fails.

23   / / /

24   / / /

25   [9]  Plaintiff now claims that he signed the agreement "under duress."  Rettig offered him
     two alternatives to signing the Agreement, and he made a voluntary choice to do so.
26   Further, the Union was present, negotiated the terms of the Agreement and advised
     Walls on the meaning of the Agreement.  (Rettig Depo., 50:16-51:4, 59:1-61:22, 66:6-
27   67:21,71:13-73:17; Walls Depo., 218:20-222:5, Ex. 61)
     [10]  *See Gilliam v. UPS*, 233 F.3d 969, 971 (7th Cir. 2000) (upholding termination of
28   employee on FMLA leave for failure to follow call-in procedures).

DEF. CCCTA'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION (CASE NO. C 08-0224-PJH)                    2261178.2

**B.    CCCTA Afforded Plaintiff Due Process Under The Federal And State Constitutions.**

Plaintiff's claims that CCCTA violated his rights under the Federal and California Constitutions by depriving him of his property interest in his public employment without due process of the law also fail as a matter of law.  Under both federal and California law, a public employee who is subject to discharge only for cause has a constitutionally protected property interest in his or her continued employment.  *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538-39 (1985); *Jones v. Omnitrans*, 125 Cal. App. 4th 273, 279 (2004).  As a result, he or she may not be terminated without being afforded procedures that protect the employee's right to due process.  *Loudermill*, 470 U.S. at 542; *Omnitrans*, 125 Cal. App. 4th at 280.  As explained below, CCCTA provided Plaintiff with all constitutionally-required protections to which he was entitled.

**1.    Plaintiff Knowingly and Voluntarily Waived His Due Process Rights By Signing the Last Chance Agreement.**

To fully satisfy public employees' due process rights, the law requires both pre- and post-termination procedures.  *See Townsel v. San Diego Metro. Transit Development Bd.*, 65 Cal. App. 4th 940, 946-48 (1998); *Skelly v. State Personnel Board*, 15 Cal. 3d 194, 215 (1975).  Public employees may, however, voluntarily waive these rights.  *Ostlund v. Bobb*, 825 F.2d 1371, 1373-74 (9th Cir. 1987); *Flippin v. Los Angeles City Bd. of Civil Service Commissioners*, 148 Cal. App. 4th 272, 281 (2007).  More specifically, when a public employee enters into an agreement with his or her employer stating that he or she may be summarily terminated for certain behavior, he or she waives the procedural due process right to protest a subsequent termination for the specified behavior.  *Robison v. City of Manteca*, 78 Cal. App. 4th 452, 460, n. 8 (2000) (employee waived due process right to appeal termination for drug use after signing "recovery agreement" waiving that right); *Lewis v. Mt. Morris Twp.*, 2007 U.S. Dist. LEXIS 76186 (E.D. Mich. 2007),*18 (employee who signed last chance agreement regarding alcohol abuse waived due process right to protest termination for violating the

- 15 -

1   agreement).  In signing the agreement, the employee knowingly and voluntarily

2   relinquishes his or her property interest in employment with respect to the issues it

3   covers.  *Lewis*, 2007 U.S. Dist. LEXIS 76186, *17-18.  As such, with respect to the

4   issues subject to the agreement, the employee becomes at-will.  *Id.*

5        That is precisely what happened here.  The Last Chance Agreement that Plaintiff

6   signed states that Plaintiff and the Union agree "that non-compliance with the

7   stipulations will results in your immediate and final termination" and that "[y]ou and your

8   Union Representative may not grieve or arbitrate this matter if you fail to comply with

9   these conditions."  (Walls Depo., 219:10-24, Ex. 61)  Plaintiff testified in his deposition

10  that Juan Lujan explained to him that he would not be able to arbitrate his termination if

11  he violated the agreement.  (Walls Depo., 220:6-14)  By agreeing to this provision,

12  Plaintiff knowingly and voluntarily waived his right to protest his termination.  His

13  employment became "at-will" with respect to attendance issues, and he had no

14  constitutional right to appeal his termination.  Accordingly, his due process claims fail.

15       **2.      CCCTA's Grievance Procedure Provided Plaintiff With Due Process.**

16       Even assuming *arguendo* that Plaintiff had not waived his due process rights, his

17  constitutional claims still fail because CCCTA provided him with all of the process to

18  which he was entitled.  Procedural due process requires that the employee be given

19  notice of the reasons for the termination, an opportunity to respond to the charges, either

20  orally or in writing, and an evidentiary hearing at which the employer bears the burden of

21  proving the facts supporting the decision to terminate the employment.  *Omnitrans*,

22  125 Cal. App. 4th at 280; *Townsel*, 65 Cal. App. 4th at 946-50.  The hearing may be held

23  either before or after the employee has been discharged.  *Omnitrans*, 125 Cal. App. 4th

24  at 280.

25       Both federal and California law recognize that a public employer may satisfy its

26  employees' due process rights through the grievance procedures in a collective

27  bargaining agreement, so long as those procedures themselves satisfy due process.

28  *Armstrong v. Meyers*, 964 F.2d 948, 950 (9th Cir. 1992); *Omnitrans*, 125 Cal. App. 4th at

284. Due process is satisfied by a collective bargaining agreement that affords the employee notice, an opportunity to be heard and the opportunity for arbitration of his or her dismissal, even though the employee's union has sole authority to request the hearing, as long as the union is acting consistently with its duty of fair representation. *Omnitrans*, 125 Cal. App. 4th at 280-81, 284; *Armstrong*, 964 F.2d at 950-51. Due process is *not* violated when the union decides not to elevate the grievance to arbitration. *Omnitrans*, 125 Cal. App. 4th at 283-84.

CCCTA's comprehensive grievance procedure indisputably satisfies that requirements of due process, and Plaintiff utilized those procedures to protest both of his terminations. In each instance, CCCTA provided Plaintiff with written notice of the termination and the reasons for the termination. (Walls Depo., 175:6-176:1, 180:24-183:2, 285:18-286:14, 303:13-304:1, 315:2-20, Exs. 57, 58, 72, 73, 75) He was able to grieve both the terminations[11] and was afforded an opportunity to be heard at the multiple grievance meetings that took place (Plaintiff actually read aloud his eight-page written statement and submitted 14 different exhibits at the Step II meeting on the second termination). (Rettig Depo., 139:10-140:16, Ex. 27) CCCTA provided written responses to his grievances at each level of the procedure, and the grievance procedure provided for arbitration as a final step. (Rettig Depo., 47:10 - 48:10, 64:21-65:16, 129:24 -130:21, 145:19-146:10, 163:2-10, Exs. 8, 23, 28, 34; Walls Depo. 194:14-196:6, 219:10-220:5, 285:17-287:2, 303:12-304:1, 315:1-20, Exs. 60, 72, 73, 75) The fact that Plaintiff chose to sign the Last Chance Agreement rather than continue with the grievance procedure for the first termination and the fact that the Union decided not to elevate his grievance to arbitration with respect to the second termination does not violate due process. In short, Plaintiff received due process of the law.

/ / /

/ / /

---

[11] In fact, CCCTA allowed him to grieve his second termination even though he had specifically agreed that it would not be subject to the grievance procedure in the Last Chance Agreement.

2261178.2

1

**C.     Plaintiff Was Not Wrongfully Terminated.**

2          Plaintiff also brings a claim for wrongful termination in violation of public policy;

3   however, as his statutory and constitutional claims fail, so must his public policy claim.  A

4   cause of action exists only where an employee's discharge violates a firmly established

5   principle of public policy.  *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980).  The

6   public policy must derive from constitutional or statutory authority.  *See Gantt v. Sentry*

7   *Ins. Co.*, 1 Cal. 4th 1083, 1090-96 (1992), overruled on other grounds by *Green v. Ralee*

8   *Eng'g Co.*, 19 Cal. 4th 66, 79-80 (1998).  Thus, to sustain such a claim, plaintiff must

9   prove that his termination violated a policy that is fundamental, beneficial for the public,

10  and embodied in a statute or constitutional provision.  *Turner v. Anheuser-Busch, Inc.*,

11  7 Cal. 4th 1238, 1256 (1994).  Because Plaintiff cannot support his FMLA and

12  constitutional claims, his public policy claim is devoid of any statutory or constitutional

13  basis and fails as a matter of law.[12]  *See Hobson v. Raychem Corp.*, 73 Cal. App. 4th

14  614, 632 (1999), overruled in part on other grounds in *Colmenares v. Braemar Country*

15  *Club, Inc.*, 29 Cal. 4th 1019 (2003).

16                              **IV.     CONCLUSION**

17         For the foregoing reasons, CCCTA respectfully requests that the Court grants its

18  Motion for Summary Judgment, or, in the Alternative, Summary Adjudication.

19  DATED:  March 3, 2010                              HANSON BRIDGETT LLP

20

21                                        By: /s/ Molly A. Lee

22                                             PATRICK M. GLENN
                                             MOLLY A. LEE
23                                           Attorneys for Defendant
                                             CENTRAL CONTRA COSTA
24                                           TRANSIT AUTHORITY

25  ───────────────────────
    [12] Although he has no independent cause of action under the California Family Rights
26  Act ("CFRA"), Plaintiff attempts to base his public policy claim on an alleged violation of
    the CFRA.  (*See* Compl., ¶13)  A CFRA claim, however, fails for the same reasons that
27  his FMLA claim fails – Plaintiff was not entitled to leave because he was not an
    employee and there is no evidence of an unlawful motivation for terminating him to
28  support a retaliation claim.  Accordingly, an alleged CFRA violation cannot support his
    claim for wrongful termination in violation of public policy.