UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KERRY WALLS,

    Plaintiff,

    v.

CENTRAL CONTRA COSTA TRANSIT AUTHORITY,

    Defendant.

_____/

No. C 08-0224 PJH

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION FOR SUMMARY JUDGMENT**

The parties' cross-motions for summary judgment came on for hearing on April 7, 2010 before this court. Plaintiff Kerry Walls ("Walls" or "plaintiff") appeared through his counsel, Benjamin Lunch and William Flynn. Defendant Central Contra Costa Transit Authority ("CCCTA" or "defendant") appeared through its counsel, Molly Lee. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS defendant's motion for summary judgment, and DENIES plaintiff's cross-motion for summary judgment, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This action arises from the 2006 termination of plaintiff's employment with CCCTA.

A.    Background Facts

The CCCTA is a public agency operating local bus transportation in Central Contra Costa County. See Declaration of C. Muegge ISO Def. MSJ ("Muegge Decl."), ¶ 2; Declaration of Benjamin Lunch ISO Pl. MSJ ("Lunch Decl."), Ex A at ¶ 1. Plaintiff was hired as a part-time bus operator in June 1995, and promoted to a full-time operator in March 1998.

Bus drivers at CCCTA are represented for collective bargaining purposes by the Amalgamated Transit Union Local 1605 ("Local 1605"). See Lunch Decl., Ex. B at 79:1-22; Ex. C. The CCCTA and Local 1605 have entered into a collective bargaining agreement, set forth in the "Memorandum of Understanding" ("MOU") between the parties – which governed the parties' collective bargaining relationship during the relevant time period in question. Id. at Ex. C.

As the MOU reflects, the CCCTA and Local 1605 negotiated an attendance control program and call-in procedure, with the aim of providing incentive for bus operators to report regularly and on time to work. See Muegge Decl., ¶ 3. Article 53 of the MOU specifically sets forth the different types of attendance infractions that bus operators may incur, including "missouts," "tardies," "sick days," and "unexcused absences." See Lunch Decl., Ex. C at Art. 53. Under Article 53's provisions, bus operators are charged with a "missout" if they are absent from work and fail to telephone or report to the dispatcher their unavailability for work at least 45 minutes prior to their report time. They are charged a "tardy" when they report late for their assigned work. They are charged for "sick days" when they are absent from work for illness, but follow the proper call-in procedure by notifying dispatch of their inability to work at least 45 minutes prior to their report time. An "unexcused absence" is an absence from work without a prior excuse, but for which the operator provides the required 45 minutes advance notice. See Muegge Decl., ¶ 4; Lunch Decl., Ex. C at Art. 53; Declaration of Molly Lee ISO Def. MSJ ("Lee Decl."), Ex. B at Ex. 1, Art. 53. Article 53 also provides that an operator who accumulates more than four missouts or five attendance infractions of any kind within a single five month period will be subject to termination. See Lunch Decl., Ex. C at Art. 53; Lee Decl., Ex. B at Ex. A, Art. 53.

Plaintiff was provided a copy of the MOU during his employment at CCCTA, and became familiar with the attendance policies stated in Article 53 during his employment with CCCTA. See Lee Decl., Ex. A at 76:4-6, 87:2-89:25.

During the eleven year period in which plaintiff worked for CCCTA, plaintiff amassed

approximately 50 different written warnings for attendance infractions, including two different Notices of Intent to Terminate based on attendance, which plaintiff received in 2002.  See Muegge Decl., ¶ 4.  He was also counseled on at least three different performance reviews that his attendance was a problem and that he needed to improve.  See id.

Plaintiff received, for example, one of his Notices of Intent to Terminate in 2002.  On April 30, 2002, plaintiff called in one morning and notified dispatch that he could not report to work because he was "incarcerated."  See Lee Decl., Ex. A at 151:20-156:14; see also id., Ex. 41.  Plaintiff then subsequently failed to show up for work over the following two week period – with no explanation for his two week failure to report except a fax from his doctor indicating that plaintiff could return to work on May 14, 2002.  Lee Decl., Ex. A at Ex. 41.  When May 14 arrived, however, plaintiff still failed to return to work or to otherwise call in, and CCCTA issued him a Notice of Intent to Terminate under Article 53 of the MOU.  Plaintiff responded to the Notice on May 19, 2002, and indicated that he could not return to work because he was in "detox" and would be entering a live-in rehabilitation program.  CCCTA told plaintiff in response that he could take as much time as he needed, and to update CCCTA on his progress, and as to when he was prepared to return to work.  See Lee Decl., Ex. A at 152:25-153:17.

Plaintiff eventually returned to work at CCCTA, and the record demonstrates that he continued to experience attendance issues.  He received an unexcused absence on September 12, 2005, and missouts for failing to report or call in on September 16, 2005, October 24, 2005, December 29, 2005 and December 30, 2005.  See Lee Decl., Ex. A at 166:12-173:22, Exs. 50-54.

After he received three more missouts for failing to report to work or timely call in on January 18, 19, and 20, 2006, CCCTA sent plaintiff a Notice of Intent to Terminate on January 20, 2006.  See Lee Decl., Ex. A at Ex. 57.  The Notice of Intent to terminate informed plaintiff that the could protest his termination at a conference to be held on

January 27, 2006.  Lee Decl., Ex. A at 175:6-176:4, Ex. 56; see also Lee Decl., Ex. D at 7:11-8:12 and Ex. 1.  Plaintiff failed to appear at the conference, and on February 2, 2006, CCCTA issued plaintiff a Notice of Termination, effective January 27, 2006.  See Lee Decl., Ex. A at Ex. 56; see also Lee Decl., Ex. D at 11:7-12:3 and Ex. 2; cf. Lunch Decl., Ex. A at ¶ 3.

Plaintiff grieved his February 2, 2006 termination and pursuant to the union's grievance procedures, plaintiff and his union representatives Juan Lujan and David Garcia met with Lisa Rettig, CCCTA's human resources manager, on February 16, 2006.  See Lee Decl., Ex. B at 34:1-55:14 and Exs. 6-8 thereto; Ex. A at 196:1-16, 199:15-202:18 and Ex. 60 thereto.  At the meeting, plaintiff offered various belated excuses justifying his absences.

Ms. Rettig issued her written response to the February 16 grievance meeting on February 23, 2006.  In her response, she agreed to resolve the grievance by reinstating plaintiff pursuant to a "Last Chance Agreement."  See Lee Decl., Ex. B at 47:13-49:21, 55:15-59:25, 61:12-62:23 and Exhibits 8 and 9 thereto.  Ms. Rettig thereafter met once more with plaintiff and Mr. Lujan on March 1, 2006, in order to discuss the terms of Ms. Rettig's proposed Last Chance Agreement.  See Lee Decl., Ex. B at 70:25-74:21, 79:10-80:24, and Exs. 9 and 11 thereto.  At the March 1, 2006 meeting, the parties agreed that plaintiff would be reinstated under such an agreement, and that under the terms of the Last Chance Agreement, plaintiff had to avoid any missout for the following three months, and if plaintiff violated these terms, he would be terminated immediately, without recourse to any grievance procedure.  See Lee Decl., Ex. A at 212:5-213:1, 220:6-222:20, 264:18-268:11.  The parties also discussed a March 2, 2006 date for plaintiff's return to work.  See id.

However, when faced with the March 2, 2006 return date, Ms. Rettig recalls that plaintiff claimed for the first time that he could not return to work so quickly, due to his depression and a sleep disorder.  He asked to be placed on medical leave until April, and offered Ms. Rettig two business cards (for a psychologist and a licensed therapist), asking

her to call in order to verify his medical claim. In response, Ms. Rettig did not accept the cards. See Lee Decl., Ex. B at 75:11-83:7, Ex. 13 thereto. Instead, she informed plaintiff he had three options: he could sign the Last Chance Agreement, which would reinstate him immediately, and he could begin work the next day, March 2; plaintiff could wait until he was ready to work again and then reapply for a position; or plaintiff could continue to pursue his grievance through the next steps of the grievance procedure.

Plaintiff opted to sign the Last Chance Agreement and return to work on March 2, 2006. That same day, he attended refresher training. The next day, however, on March 3, 2006, plaintiff failed to call in and failed to report for his afternoon regular shift, due to claimed depression and sleep deprivation. See Lunch Decl., Ex. B at 229:24-230:8; Ex. F at 292:18-293:10. As this constituted a missout, CCCTA issued a Notice of Termination on March 6, 2006, notifying plaintiff that he violated the Last Chance Agreement and was being terminated immediately. See Lee Decl., Ex. D at 34:15-35:16, Ex. 12 thereto; Id., Ex. A at 229:7-230:5, Ex. 62 thereto. The Notice of Termination reminded plaintiff that he had waived his right to grieve the termination. See id.

Plaintiff and the Local 1605 nonetheless filed a grievance on March 8, 2006, seeking reinstatement. See Lee Decl., Ex. A at 235:23-237:7, Ex. 64 thereto; see also Lunch Decl., Ex. F at 282:16-283:3. CCCTA allowed the grievance process to go forward, and grievance meetings were held on March 16, 2006, March 30, 2006, and April 10, 2006. See Lunch Decl., Ex. F at 285:18-286:16, 303:13-304:10, 315:2-20. During the grievance process, plaintiff contended that he was improperly charged a missout on March 3, and that he should have been granted medical leave. See Lee Decl., Ex. B at 122:10-123:3, 137:9-146:10, Exhibits 21, 25-28 thereto; see also id., Ex. A at 303:13-305:1, Ex. 73 thereto.

CCCTA denied plaintiff's grievance, finding he was properly charged a missout and furthermore, that plaintiff was not entitled to medical leave because he was not an employee when he requested medical leave, having been terminated on January 27. See Lee Decl., Ex. B at 145:19-146:10, Ex. 28 thereto; Id., Ex. A at 315:1-20, Ex. 75 thereto.

Local 1605 subsequently decided not to take the grievance to arbitration.  Lee Decl., Ex. A at 315:15-319:23.

B.   The Instant Action

Plaintiff filed the instant action on January 14, 2008.  The complaint alleges four claims against defendant CCCTA:  (1) for violation of the Family Medical Leave Act ("FMLA"), pursuant to 29 U.S.C. § 2601 et seq.; (2) for wrongful termination in violation of public policy; (3) for violation of plaintiff's federal constitutional right to due process, pursuant to 42. U.S.C. § 1983; and (4) for violation of plaintiff's state constitutional right to due process.  See generally Complaint.

The parties have now filed cross-motions for summary judgment.  Plaintiff seeks summary judgment in connection with only his first, third, and fourth causes of action.  Defendant, for its part, appears to be seeking summary judgment with respect to all four causes of action, and in the alternative, summary adjudication with respect to any narrower grouping of claims.

## DISCUSSION

A.   Legal Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FRCP 56(c).  Material facts are those which may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The party moving for summary judgment bears the initial burden of demonstrating

1 the absence of a genuine issue of fact for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317,

2 323 (1986).  When the moving party will have the burden of proof on an issue at trial, it

3 must affirmatively demonstrate that no reasonable trier of fact would find other than for the

4 moving party.  On an issue for which the nonmoving party will have the burden of proof at

5 trial, the moving party need only point out "that there is an absence of evidence to support

6 the nonmoving party's case."  Id.  Once the moving party satisfies its initial burden, the

7 nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set

8 forth specific facts showing that there is a genuine issue for trial."  FRCP 56(e).  If the

9 nonmoving party fails to make this showing, "the moving party is entitled to judgment as a

10 matter of law."  Celotex, 477 U.S. at 323.

B.   Legal Analysis

Plaintiff's motion for summary judgment is limited to his first, third, and fourth claims for relief, while defendant moves for summary judgment in connection with all four of plaintiff's asserted claims.  The parties' cross-motions thus boil down to a straightforward analysis of each cause of action raised in plaintiff's complaint: (1) the FMLA claim; (2) the federal constitutional due process claim under § 1983; (3) the state constitutional due process claim; and (4) the wrongful termination claim.

Each claim is discussed in turn, as follows.  Because the analysis for the federal and state due process claims overlaps, however, these two causes of action are considered together.

1.   FMLA Claim (First Cause of Action)

Plaintiff alleges that defendant interfered with plaintiff's FMLA rights.  See Complaint, ¶¶ 10-11.  This claim is premised upon plaintiff's March 1, 2006 request for medical leave, which request plaintiff asserts was improperly denied by defendant.[1]  Here, plaintiff seeks partial summary judgment as to the limited issue whether plaintiff was "an eligible employee

---

[1] While there is some dispute about the nature of plaintiff's request for leave at the March 1 meeting, defendant is willing to concede plaintiff's version of the facts for purposes of the instant summary judgment motions.

7

within the meaning of FMLA" when he requested leave at the March 1, 2006 meeting.  See Pl. MSJ Br. at 15:16-18.  Defendant, however, seeks summary judgment as to the entirety of plaintiff's FMLA claim, and specifically seeks a ruling that defendant did not violate plaintiff's FMLA rights.

Ultimately, consideration of the limited issue raised by plaintiff – i.e., whether plaintiff can be deemed an "eligible employee" for purposes of the FMLA at the time he made his leave request – resolves the claim in its entirety.  For if plaintiff is *not* deemed an eligible employee under the FMLA at the time he requested leave on March 1, then defendant was under no duty to provide FMLA leave.  See 29 U.S.C. § 2611(2)(the FMLA covers *employees* who have worked for a covered employer for at least 12 months and for at least 1,250 hours during the previous 12-month period); see also 29 U.S.C.A. § 203 (FMLA's definition of "employ/employee" means to "suffer or permit to work").

And as defendant persuasively argues, the foregoing inquiry is to be answered in the negative.  The undisputed facts demonstrate:  that plaintiff was terminated as of January 27, 2006, and that a notice of termination was sent on February 2, 2006, to that effect; that plaintiff and the union subsequently grieved his termination, and that in the process, various grievance meetings were held, including the March 1, 2006 meeting; that the purpose of the March 1, 2006 meeting was to discuss a proposal and terms for a Last Chance Agreement; that it was at this meeting that plaintiff requested leave, not wanting to return to work on March 2 for medical reasons; that in response, plaintiff was told he could (1) sign the Last Chance Agreement, which would reinstate him immediately, and he could begin work the next day, March 2, (2) wait until he was ready to work again and then reapply for a position, or (3) could continue to pursue his grievance through the next steps of the grievance procedure; and that plaintiff ultimately chose the first option, signed the Last Chance Agreement on March 2, 2006, and had his employment reinstated that same day. See, e.g., Lee Decl., Ex. A at Ex. 56; see also Lee Decl., Ex. D at 11:7-12:3 and Ex. 2; Lee Decl., Ex. B at 75:11-83:7, Ex. 13 thereto.

All of which compel the same conclusion: plaintiff was not a reinstated "employee" until March 2, 2006. Put another way, plaintiff was a terminated, former employee on March 1, 2006, when he requested leave. And since he was not an actual "employee" on that date, it follows that he could not have been covered under the FMLA – since the statute expressly covers only "employees." See, e.g., 29 U.S.C. § 2611(2).

Plaintiff seeks to avoid this conclusion by arguing that his reinstatement on March 2, 2006 also reinstated his employment from January 27, 2006 onwards, including March 1, 2006, thereby providing FMLA coverage on March 1, 2006. However, while it may be true that plaintiff's pay was reinstated at the same level as that which he was entitled to before his January 27 termination, there is simply no evidence or legal authority submitted by plaintiff that suggests – let alone holds – that a subsequent reinstatement converts a prior period of non-employment into employment for FMLA purposes. As such, plaintiff's March 2 reinstatement to employment cannot be said to have bestowed a retroactive employment status upon plaintiff under the FMLA.

Moreover, to the extent plaintiff additionally suggested at the hearing that the reference to a date of March 1, 2006 in the Last Chance Agreement implies that plaintiff's reinstated employment began on March 1, 2006, this argument is to no avail. It is undisputed by both parties – and was confirmed by both sides' counsel at the hearing – that plaintiff did not actually sign the Last Chance Agreement until March 2, 2006. Thus, the agreement, and plaintiff's reinstatement as an employee, was not effective until March 2.

Even if the court were inclined to construe the March 1, 2006 date referenced in the Last Chance Agreement – or plaintiff's subsequent reinstatement at the same pay level as that previously held by him months earlier – as the proof of plaintiff's reinstatement to actual employee status as of March 1, plaintiff's own actions following his March 1 request for leave belie his argument here. In response to plaintiff's request for leave at the March 1 meeting, Ms. Rettig specifically gave plaintiff three options, only one of which was to sign

9

the Last Chance Agreement with a return to work date of March 2, 2006. Yet this is the option plaintiff exercised, by signing the agreement on March 2, and then returning to work on that same date. In doing so, plaintiff effectively withdrew his March 1 request for leave. Thus, if plaintiff required a medical leave from work on March 3, 2006, he needed to re-submit a request for such leave on March 2 – which it is undisputed he did not do. Defendant would not have been obligated to provide leave under the FMLA, unless an appropriate request for leave had first been made.

Finally, it bears noting that the FMLA does not relieve employees of their responsibility to request any medical leave to which they may be entitled in the manner required by the employer. See 29 C.F.R. § 825.303(d). As a result, even if plaintiff had been entitled to medical leave – which the foregoing analysis shows he was not – plaintiff still would have been required to follow defendant's procedures in requesting medical leave. Plaintiff not only failed to do so, he simply failed to show up on for work on March 3. Such actions are unacceptable in any employment situation, but more so in the present situation, given the important public service provided by public transportation employees.

In sum, the undisputed facts demonstrating that plaintiff was not reinstated to his employment with defendant until March 2, 2006, the FMLA's coverage of "employees" only, and the lack of legal authority submitted by plaintiff in support of any contrary conclusion, all compel the court to conclude that plaintiff was not an eligible FMLA "employee" at the time he requested leave on March 1, 2006. Thus, defendant was not obligated to provide such leave, and cannot be charged with a violation of the statute. Defendant's motion for summary judgment in connection with plaintiff's FMLA claim is therefore GRANTED, and plaintiff's cross-motion for partial summary judgment as to the same claim is DENIED.

2.   Federal/State Due Process (Third and Fourth Causes of Action)

Plaintiff's complaint also alleges that defendant has violated (1) plaintiff's federal constitutional due process rights under § 1983; and (2) plaintiff's state constitutional due process rights under Article I, §§ 7 and 15 . See Complaint, ¶¶ 15-23. Specifically, plaintiff

1  contends that his due process rights were violated when CCCTA terminated plaintiff's
2  employment on March 3, 2006, without "either a pre-termination or post-termination
3  hearing." See id. ¶ 8.

4  It is well-established that a public employee has a property interest in continued
5  employment, and is thus entitled to constitutional due process protections upon termination
6  or discharge. See, e.g., Bd. of Regents v. Roth, 408 U.S. 564, 576 (1972). Due process,
7  under federal or state law, has generally been held to require that a public employee be
8  provided with *both* pre-termination *and* post-termination due process. See Cleveland Bd. of
9  Educ. v. Loudermill, 470 U.S. 532, 542, 545 (1985)(describing "the root requirement" of the
10  federal Due Process Clause as being "that an individual be given an opportunity for a
11  hearing before he is deprived of any significant property interest"); Skelly v. State
12  Personnel Bd., 15 Cal.3d 194, 215 (1975)(holding that due process under federal and
13  California constitutions requires that a public employer "accord the employee [] prior
14  procedural protections to 'minimize the risk of error in the initial removal decision'").

15  As for what the shape of pre-termination and post-termination due process must look
16  like, a pre-termination hearing generally has less stringent requirements than a post-
17  termination hearing. In a pre-termination hearing, a tenured public employee is simply
18  "entitled to oral or written notice of the charges against him, an explanation of the
19  employer's evidence, and an opportunity to present his side of the story." See Loudermill,
20  470 U.S. at 546. A post-termination hearing, by contrast, generally requires a full
21  evidentiary hearing. Levine v. City of Alameda, 525 F.3d 903, 906 (9th Cir. 2008)(noting
22  that an employee with a property interest is entitled to a limited pre-termination hearing
23  which is to be followed by a more comprehensive post-termination hearing).

24  Here, defendant asserts that summary judgment on plaintiff's due process claims is
25  warranted because plaintiff unequivocally waived his right to protest his termination by
26  executing the Last Chance Agreement. Even if not, plaintiff was afforded the chance to
27  grieve his termination. Plaintiff, by contrast, asserts that the Last Chance Agreement did
28

1 not alter or waive plaintiff's right to due process or to a pre-termination right specifically,
2 which, at a minimum, defendant does not dispute it failed to provide.  Thus, the parties'
3 arguments generally boil down to two issues: first, whether plaintiff waived his right to due
4 process protections when he signed the Last Chance Agreement, which provided for
5 immediate termination upon violation of the Agreement's provisions; and second, whether,
6 if no waiver was made, defendant nonetheless complied with any due process
7 requirements by following due process termination procedures in connection with March 6,
8 2006 termination.

9       The first of these issues is ultimately dispositive.  As a general rule, a plaintiff may
10 waive his constitutional right to due process in the employment context – provided,
11 however, that such waiver is knowing, intelligent, and voluntary.  See, e.g., Johnson v.
12 Zerbst, 304 U.S. 458, 464 (1938)(waiver of a constitutional right must be knowing and
13 voluntary); Correa v. Nampa School Dist., 645 F.2d 814, 816-17 (9th Cir.1981).

14       The Last Chance Agreement, signed by plaintiff on March 2, 2006, provides: that
15 plaintiff "will have no more missouts and no more than one sick instance from 3/1/06 to
16 5/31/06;" that plaintiff and his union representative "may not grieve or arbitrate this matter if
17 [plaintiff fails] to comply with these conditions;" and that "non-compliance with the
18 stipulations will result in [plaintiff's] *immediate and final* termination."  See Lee Decl., Ex. A,
19 Ex. 61 thereto (emphasis added).  The agreement goes on to state that "by placing your
20 signature below you are agreeing with the above conditions."  See id.  Additionally, plaintiff
21 testified at his deposition that he understood the stipulations set forth in the agreement, and
22 that Mr. Lujan, plaintiff's union representative, explained to him that he would not be able to
23 arbitrate his termination if he violated the agreement.  See Lee Decl., Ex. A at 219:10-
24 220:14.

25       These undisputed facts are sufficient to demonstrate a knowing, intelligent, and
26 voluntary waiver of any rights plaintiff may have had to either a pre-termination or post-
27 termination hearing.  By affirmatively agreeing to the attendance policy set forth in the Last
28

12

Chance Agreement, and to "immediate and final" termination in the event of non-compliance, plaintiff agreed to just that: i.e., summary termination, without the normal procedures that would normally accompany plaintiff's termination.

Defendant notably relies on two cases, Robison v. City of Manteca, 78 Cal. App. 4th 452, 460, n.8 (2000), and Lewis v. Mt. Morris Twp., 2007 WL 3026035 (E.D. Mich. 2007), for additional support. Those cases are not directly apposite to the case at bar.[2] Nonetheless, both cases do support the general proposition that, as the court finds here, an employee may voluntarily enter into an agreement with an employer defendant, whereby the employee agrees to be bound by certain conduct requirements, and face immediate and summary termination upon non-compliance with those requirements.

Plaintiff, moreover, has offered no case law to the contrary, establishing plaintiff's legal inability to waive due process rights upon execution of the Last Chance Agreement in question.

In sum, the court concludes that plaintiff has affirmatively waived his right to pre and post-termination proceedings, by virtue of having knowingly, voluntarily, and intelligently executed the Last Chance Agreement on March 2, 2006. Having so concluded, it is unnecessary for the court to resolve whether defendant nonetheless complied with any due process requirements by following solely post termination procedures in connection with March 6, 2006 termination.

Accordingly, defendant's motion for summary judgment is GRANTED with respect to plaintiff's third and fourth claims for relief, and plaintiff's cross-motion for summary judgment as to both claims is DENIED.

3. <u>Wrongful Termination (Second Cause of Action)</u>

Finally, defendant alone seeks summary judgment with respect to plaintiff's claim for

---

[2] Robison discussed indirect waiver of the right to appeal a termination decision after plaintiff employee had failed to abide by a recovery treatment agreement, and Lewis discussed a last chance agreement in the context of complaint allegations that affirmatively stated that plaintiff became an "at will" employee via the agreement.

wrongful termination in violation of public policy. This claim is premised on both the FMLA, and federal/state due process claims. See, e.g., Complaint, ¶ 13. Since each of these claims fails for the reasons described above, plaintiff's claim for wrongful termination necessarily fails. Plaintiffs, moreover, has failed to rebut defendant's arguments on this point, thereby additionally conceding them.

Accordingly, summary judgment as to the wrongful termination claim is GRANTED in defendant's favor.

C.  Conclusion

For the foregoing reasons, defendant's motion for summary judgment is GRANTED in full, and plaintiff's cross-motion for partial summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: April 26, 2010

PHYLLIS J. HAMILTON
United States District Judge